389 A.2d 42

Virgil TURNER, Appellant,

v.

**JONES & LAUGHLIN STEEL CORPORATION and Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided June 5, 1978.

Reargument Denied July 21, 1978.

Thomas W. Henderson, Pittsburgh, for appellant.

Roy F. Walters, Jr., Carl B. Fried, Fried, Kane & Walters, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

MANDERINO, Justice.

Appellant was severely injured on May 13, 1972, in a work-related accident, in the course and scope of his employment with appellee Jones and Laughlin Steel Corporation (J. & L.). The accident severed appellant's spinal cord at chest level, rendering him a complete paraplegic with total loss of

sensation in the lower body and total loss of use of all body functions below the chest level. There are no expectations of improvement in his condition.

On May 24, 1972, appellant and J. & L. entered into an open compensation agreement under which appellant has been paid $94.00 per week for total disability as authorized by § 306(a) of the Workmen's Compensation Act, 77 P.S. § 511. On July 2, 1973, appellant filed a petition to modify the compensation agreement to an award of compensation for the specific loss of use of both legs, under § 306(c), 77 P.S. § 513(25).

After hearing testimony from medical experts at a modification hearing ordered by the Workmen's Compensation Appeal Board, the referee found as a fact that appellant had lost the use of both legs and awarded him the statutory compensation of $94.00 a week, for a total of 870 weeks—410 weeks for each leg plus a 50 week healing period—retroactive to the date of the accident, with full credit to J. & L. for all payments made under the compensation agreement. On appeal, the Board, in a written opinion, concluded that appellant's injuries "have resolved to a specific loss of use of both legs" and affirmed the referee's order. J. & L. then appealed to the Commonwealth Court, and a three judge panel of that court reversed the order of the Board.

The material facts relevant to this appeal are not in dispute. Both parties agree that appellant's injuries are covered by the Workmen's Compensation Act; that appellant has lost the use of both legs; and that injuries to other parts of his body have rendered him totally disabled. This appeal, therefore, deals only with questions of law regarding how the relevant provisions of the Workmen's Compensation Act are to be applied to the undisputed facts. The issues now before us are (1) whether a claimant who is factually eligible for compensation either on the basis of total disability or specific losses may elect compensation under the provision more beneficial to him; and (2) whether the Board may modify an agreement for total disability compensation to grant specific loss benefits solely on the basis of claimant's election.

■ The compensation which appellant is now receiving is for total disability, pursuant to § 306(a) of the Act, 77 P.S. § 511. Total disability payments are intended as compensation for *loss of earning power,* based not upon specific injuries but on the totality of the claimant's condition. *See, e. g., Killian v. Heintz Div. Kelsey Hayes,* 468 Pa. 200, 360 A.2d 620 (1976); *Borough of Catawissa v. Shultz,* 9 Pa. Cmwlth. 546, 308 A.2d 633 (1973); *Marshall v. City of Altoona,* 208 Pa.Super. 465, 222 A.2d 408 (1966). Absent an improvement in appellant's condition terminating his total disability, these payments are available for his lifetime under § 306(a) as amended in 1972.

■ Appellant wishes, however, to modify the agreement in order to obtain his benefits pursuant to § 306(c), 77 P.S. § 513(25), which is intended specifically to compensate a claimant for the *loss of use* of designated bodily members rather than for general loss of earning power. Under this section appellant's weekly benefit would remain the same, but compensation would terminate at the end of 870 weeks rather than at appellant's death or the end of his disability.

In the usual case total disability payment would be the most beneficial to a claimant, since its payment is not limited to a term of weeks as is specific loss payment. For this appellant, however, there are economic advantages in securing an award under § 306(c) for the loss of use of his two legs.

Appellant's primary concern is to maximize his monthly income. Appellant receives a permanent incapacity pension of $197.00 per month under the Basic Steel Agreement to which, as a union member, he is a party. The agreement provides that when the employee reaches age 65, any amount received pursuant to Workmen's Compensation law must be deducted from that pension amount. Those fixed statutory payments for loss of bodily members; however, are specifically excepted. Thus, if appellant—now aged 65—receives his compensation as total disability under § 306(a), his pension of $197.00 per month will be entirely eliminated by the set-off of $94.00 per week received as

Workmen's Compensation. Under an award for specific loss pursuant to section 306(c), however, the pension will not be affected. Therefore, modification of the original agreement will in effect provide appellant with $197.00 per month more than he can now receive.

In addition, appellant is looking to the effects of a modification on his survivors. Under a 1972 amendment to § 306(g) of the Act, 77 P.S. § 541, upon the death of the injured employee specific loss benefits awarded under § 306(c) continue to be payable to designated dependents for the full statutory term of the award, whether or not the death is caused by the compensable injury. Benefits paid pursuant to § 306(a) for total disability, however, cease at the claimant's death unless the death was caused by the injury and occurred within 300 weeks after the accident—a reference point now passed in appellant's case.

For those specific reasons, it is to this appellant's over all financial advantage to receive compensation only for the loss of two legs rather than for total disability.

It is this unusual position which caused appellant to seek modification of the original agreement. Since total disability compensation has heretofore been considered a greater benefit than specific loss compensation, modification requests have usually arisen in either of two situations: when a claimant has alleged that his loss of use of a bodily member has developed into a total disability, entitling him to increased compensation; or when an employer has alleged that a claimant's condition has improved to the extent that his total disability benefits may be reduced or terminated. Such cases, based as they were upon some change in the claimant's condition, logically required that the change be proved in order to justify a modification, and it is upon this line of cases that the Commonwealth Court relied in the instant case.

We are not convinced, however, that the rule of law developed for those cases is applicable where, as here, a modification is sought not on the basis of factual allegations related to the injuries but upon appellant's assertion that the

statutory scheme should permit him to elect the more beneficial of two provisions equally applicable to his injuries. The cases relied on by the Commonwealth Court apply when the modification is to be based on a change of physical condition—i. e., when an altered factual situation requires the adjustment—but not when the modification is based upon a matter of statutory interpretation.

As a factual matter, it cannot be disputed that appellant has lost the use of two legs and has no more to prove to be eligible for compensation under § 306(c) on the face of the provision alone. As a matter of law, however, it is argued that § 306(d), 77 P.S. § 513(d), restricts one who is totally disabled to compensation under § 306(a), the provision for total disability benefits. We believe that this argument is based upon an erroneous interpretation of Section 306(d). This section provides that:

"(d) Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in clause (c) of this section for the specific healing period. In the event the employe suffers two or more permanent injuries of the above enumerated classes compensable under clause (c) of this section, he shall be compensated for the largest single healing period rather than the aggregate of the healing periods."

Appellee has interpreted this section to mean that where the claimant has specific loss injuries which entitle him to compensation under § 306(c) for loss of use of bodily members, but also has some additional injuries qualifying him for total disability, he cannot receive compensation for specific losses until his total disability ceases. The Commonwealth Court apparently agreed with this interpretation, for in requiring that some change of condition be shown it held

that appellant must establish something *less than* total disability to recover for specific loss.

This interpretation ignores the position and function of this provision within the statute as a whole and overlooks the specific statutory language of Section 306(d).

The Act was renumbered in the 1972 revisions, and § 306(d) inexplicably became subsection (d) of 77 P.S. § 513—a section which has no subsections (a), (b), or (c). Nevertheless, the order and position of the relevant sections has remained the same; Sections 306(a), (b), (c) and (d) of the Act follow in order as Sections 511, 512, 513, and 513(d). The importance of this lies in the fact that they were written as subsections of one provision, and still stand in the same position as renumbered sections of the amended Act.

These related provisions of the Act form a pattern which clarifies the legislative intent in enacting Section 306(d), and which indicates to us that the legislature did not intend this as a mandate that total disability cease before any less comprehensive injuries be compensated.

These sections are preceded by the heading "Schedules of Compensation," and the provisions which follow designate the specific amounts to be paid as compensation benefits and the term for which they are payable. Subsection 306(a) defines the amount payable for total disability; subsection 306(b) sets out compensation for partial disability; and subsection 306(c) is a detailed schedule of compensation for specific losses. Subsection 306(d) then provides that when a specific loss claimant under subsection (c) has other injuries in addition to the specific loss which result in compensation for *temporary* total disability, the number of weeks specified for the compensation of the specific loss in schedule (c) will not begin until the period of *temporary* total disability has ended.

Read in the context in which it was enacted, this subsection provides for separate computation of the period for paying benefits when two separate kinds of compensation are to be paid, in order to prevent simultaneous payment of

two different benefits and to prevent the number of weeks allowed under subsection (c) from being reduced by the payment of other compensation.

We do not believe that this provision can be read for any other purpose. None of those subsections contain any substantive provisions relating to eligibility for compensation. Those requirements are set forth extensively elsewhere in the Act. This set of provisions functions as the heading suggests: they are "Schedules of Compensation", relating only to the specifics of payment.

Section 306(b), the Schedule of Compensation for partial disability, contains a similar provision:

"Should total disability be followed by partial disability, the period of five hundred weeks [the maximum period for payment of partial disability benefits] shall not be reduced by the number of weeks during which compensation was paid for total disability."

It seems clear that § 306(d) was intended to serve this same function in relation to § 306(c), 77 P.S. § 514—specific loss compensation. Moreover, also a part of this set of provisions entitled "Schedules of Compensation" is § 306(e), which provides that no compensation shall be allowed for the first seven days after disability begins; and immediately preceding § 306(d), in the last paragraph of § 306(c), the legislature defined other time periods for which benefits may be received. Placed as it is with other subsections enacted to designate when compensation is payable, subsection (d) must be read to serve the same purpose. It does not require that the factual status of total disability cease before specific loss benefits are available. In plain English, it requires that payment for specific losses not begin until the payment for temporary total disability has ended. Nothing therein can be construed to say that a claimant cannot voluntarily cut short a period of total disability payment so as to initiate a period for specific loss payments. The provision merely prohibits simultaneous payments and reduction of the number of weeks for specific loss payment.

By ignoring the word "temporary" in subsection (d), appellees changed the character of this provision. When that qualifying word is included it becomes obvious that the legislature contemplated a situation in which severe but curable injuries might render a claimant *temporarily* totally disabled for a period of time after the accident. The word "temporary" assumes a natural termination of the total disability status by the eventual healing of the injuries other than the specific loss injuries, and the provision is intended only to establish the payment procedures when that healing occurs and total disability ceases, leaving claimant still factually qualified for benefits for permanent specific loss. All that must cease, under this language, is the compensation period for temporary total disability. Inherent in this provision is the assumption that no election of benefits will be necessary, because the total disability is *temporary* only, and will eventually terminate. This is not applicable to our appellant, whose total disability status is not expected to improve. No natural termination is inherent in a permanent disability, hence specific loss benefits cannot be presumed to follow in due course those for the temporary total disability. When factually the two types of benefits cannot both be available, as contemplated in circumstances to which § 306(d) is relevant, an election between the two should be permitted.

Appellee also argues that no election is permissible under Section 306(c) 23, 77 P.S. § 513(23), which provides that "[U]nless the board shall otherwise determine, the loss of . . . both legs . . . shall constitute total disability, to be compensated according to the provisions of clause (a) [§ 306(a), 77 P.S. § 511]."

We disagree. On the contrary, this section explicitly gives to the Board the discretion to determine the optimum benefit available to a claimant within the statutory scheme. Section 306(a)'s total disability compensation is generally the most beneficial of the benefit schedules, providing, as it does, both the highest allowable compensation and the only compensation not limited to a maximum term of weeks.

The only reasonable interpretation of Section 306(c) 23, especially in light of our duty to resolve borderline interpretations in favor of the injured employee (*See, e. g. Hinkle v. H. J. Heinz,* 462 Pa. 111, 116, 337 A.2d 907, 909 (1975) and the cases cited therein), is that the legislature intended by this section to provide for the highest possible compensation for a claimant who has lost both legs. In most cases this is compensation based on total disability. The legislature nevertheless empowered the Board to determine otherwise should another provision prove more advantageous to the claimant. We can conceive of no other purpose for the exception contained in Section 306(c)(23).

The Board exercised its discretion in this case by finding that appellant was entitled to compensation under Section 306(c) for the loss of both legs, and this discretion was exercised within both the letter and the spirit of the Act.

Our review of the Board's order is limited to whether constitutional rights were violated, an error of law was committed or any necessary finding of fact was unsupported by substantial evidence, since appellant, as the party seeking to modify a Workmen's Compensation Agreement, had the burden of proof before the Board and there prevailed. *Workmen's Compensation Appeal Board v. Ira Berger & Sons,* 470 Pa. 239, 369 A.2d 282 (1977); *Workmen's Compensation Appeal Board v. Power Systems Division, McGraw Edison,* 20 Pa.Cmwlth. 548, 342 A.2d 445 (1975); *Workmen's Compensation Appeal Board v. American Can Co.,* 22 Pa. Cmwlth. 164, 347 A.2d 746 (1975).

The facts are not in dispute, and we find that no error of law was committed. There is nothing in the Act which requires that appellant be compensated under the schedule for total disability when he has met the burden of proof for specific loss compensation. We hold that his award could properly be made for the loss of two legs under Section 306(c) rather than for total disability under Section 306(a).

Furthermore, we feel that the modification order, as rendered, was procedurally proper. Section 413 of the Amended Act, 77 P.S. § 771, gives a referee the power to

modify a compensation agreement if it was incorrect in any material respect. This provision justifies modification of a compensation agreement for mistake of fact or law. *Universal Film Exchanges, Inc. v. Viking Theatre Corp.,* 400 Pa. 27, 161 A.2d 610 (1960); *International Milling Co. v. Hachmeister, Inc.,* 380 Pa. 407, 110 A.2d 186 (1955); *Fehr v. Y.M.C.A., Pottsville,* 201 Pa.Super. 107, 192 A.2d 143 (1963). Both parties to this action were mistaken as to the proper application of the relevant statutory provisions when this agreement was made. In light of the liberal intent of this Act, an agreement which severely affects a claimant financially by eliminating almost $200 a month from his income is indeed materially incorrect when a substantially similar compensation under another Section for which he qualifies could preserve for him that additional income. In modifying the agreement, the referee gave appellant the election which is available to him under the statute. Certainly no injustice was done to J. & L. The order was made retroactive to the initial compensation determination, and all sums already paid by appellee were ordered deducted from the modified award. In fact, the amount of weekly compensation actually remained the same. Thus, to date, J. & L. stands in precisely the same position as if the order for specific loss benefits had been the order originally entered.

The award of compensation for a 50 week healing period is likewise proper. Although Section 306(d) eliminates compensation for a healing period when temporary total disability payments have preceded the specific loss benefits, no such payments can be considered to have been made herein, since the modification order is retroactive. By making the order retroactive, the Board started the running of the statutory period of compensation for loss of two legs—820 days—on the first day appellant received compensation, and no compensation other than for specific loss has thus been received. The provisions of § 306(c) authorizing payment for a 50 week healing period for the loss of both legs are therefore applicable.

Our review of the Board's order of modification and the Workmen's Compensation Act in its entirety convinces us

that the Board's order was within its authority and without any error of law.

The provisions of the Workmen's Compensation Act are remedial in nature and are to be liberally construed, with borderline interpretations resolved in favor of the injured employee. This principal is so firmly a part of our law that the citations are legion, from all courts of our Commonwealth. *See, e. g., Hinkle v. H. J. Heinz, supra,* 462 Pa. at 116, 337 A.2d at 909 (1975); *U. S. Steel Corp. v. Workmen's Compensation Appeal Board,* 10 Pa.Cmwlth. 247, 309 A.2d 842 (1973); *Carpinelli v. Penn Steel Castings Co.,* 209 Pa.Super. 390, 227 A.2d 912 (1969). We find the legislative intent clear in the language of the Act.

The Commonwealth Court itself has said that:

"[i]t has long been recognized that the workmen's compensation system is socially oriented and the Pennsylvania Workmen's Compensation Act should be liberally construed in order to effectuate the basic social and remedial purposes of the law."

*Vignoli v. Mathies Coal Co.,* 29 Pa.Cmwlth. 1, 369 A.2d 908, 910 (1977) (Footnote omitted).

We therefore reverse the order of the Commonwealth Court and reinstate the order of the Workmen's Compensation Appeal Board.