604 A.2d 319

**PITTSBURGH STEELERS SPORTS, INC. and the Travelers Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ERENBERG), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Feb. 18, 1992.

Petition for Allowance of Appeal
Denied July 1, 1992.

548

Harry W. Rosensteel, for petitioners.

Theodore E. Breault, for respondent.

Before COLINS and PALLADINO, JJ., and BARRY, Senior Judge.

COLINS, Judge.

The Pittsburgh Steelers Sports, Inc. (employer) and the Travelers Insurance Company (collectively petitioners) appeal an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's grant of workmen's compensation benefits to former professional football player, Richard M. Erenberg (Erenberg) and modifying the referee's award of compensation regarding credits for payments made by petitioners between October 16, 1987 and February 1, 1988.

Erenberg was employed by the Pittsburgh Steelers as a professional football player between 1984 and 1987. In May, 1987 and again on October 15, 1987, Erenberg suffered injuries to his right knee in the course of his employment and as a result became temporarily totally disabled from October 16, 1987 up to and including January 31, 1988. The referee found that as of February 1, 1988, Erenberg has been unable to resume his previous occupation and that petitioners failed to establish other suitable work which Erenberg was capable of obtaining and performing. Erenberg filed the present claim for benefits for the injuries sustained in May, 1987, as well as the October 16, 1987 injury.

The nexus of this dispute concerns petitioners' credit for monies paid to Erenberg after the injury. Before Erenberg's injury in October, 1987, Erenberg received $33,750.00 of his $135,000.00 annual salary. Erenberg elected to defer the remaining $101,250.00 of his salary to be paid in Febru-

ary, 1988. After the injury, Erenberg was paid $65,000.00 based on Article X of his contract which allows a player to receive up to a maximum of 50% of his contract salary for the season following the season in which the injury occurred. Sixty-five Thousand Dollars ($65,000.00) was paid to Erenberg in weekly installments of $3,033.27 over a period of 21³⁄₇ths weeks, starting from July 30, 1987 through December 26, 1987, the last regular season game. Additionally, Erenberg was paid severance pay of $70,-000.00.[1]

The referee ordered petitioners to pay Erenberg compensation at a rate of $361.00 per week, starting October 16, 1987, less 21³⁄₇ths weeks, and less counsel fees. In his findings of fact, the referee found that the $65,000.00 worth of injury protection payments were made in relief of Erenberg's incapacity to labor and were not wages or salary for work performed, thereby holding that this money was paid in lieu of workmen's compensation. Additionally, the referee found that the payment of $101,250.00 was also made in relief of Erenberg's incapacity to labor and not salary for work performed, thereby allowing petitioners a credit for this compensation as well. As for the $70,000.00 severance pay, the referee found that this money was paid for services performed and not in relief of Erenberg's incapacity to labor. Hence, petitioner did not receive any credit for the severance pay.

The Board affirmed the referee's grant of compensation to Erenberg. However, it amended this award regarding the credit petitioners were to receive for payments made to Erenberg after the injury. First, regarding the remaining $101,250.00 paid to Erenberg in February, 1988, the Board determined that this money was salary paid for the contract year between 1987 and 1988 and reasoned that it was not payment in lieu of compensation for petitioners' credit. As for the payments of $65,000.00 for injury protection and

---

1. We note that the total amount of compensation Erenberg received after his injury was $270,000.00, including $135,000.00 of salary payments, $65,000.00 of injury protection payments, and $70,000.00 severance pay.

$70,000.00 severance pay, the Board considered this money as wages, thereby denying petitioners credit for these funds.

Petitioners raise two issues in this matter: (1) that the $65,000.00 injury protection payment was made in lieu of compensation, and credit for this money should be calculated according to Erenberg's compensation rate, giving petitioners additional weeks of credit against Erenberg's workmen's compensation award; and (2) that the referee failed to make a finding of fact that Erenberg was partially and not totally disabled.

Petitioners argue that the Board erred in the manner in which it credited the injury protection payment of $65,000.00. According to petitioners, the Board calculated the credit for severance and injury pay by adding the two figures of $70,000.00, plus $65,000.00, amounting to $135,000.00 and dividing this amount by Erenberg's average weekly wage. Petitioners contend that it was appropriate for the Board to divide the $70,000.00 severance pay by Erenberg's average weekly wage, because the $70,000.00 was, in fact, payment for services pursuant to Erenberg's contract. However, petitioners assert that the $65,000.00 should not have been divided by Erenberg's average weekly salary. The $65,000.00 should have been credited as payment in lieu of compensation. Therefore, it should have been divided by Erenberg's workmen's compensation amount which is $361.00 per week, thereby allowing petitioners a credit for 180 additional weeks of compensation.

Our scope of review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or whether the referee's findings of fact are supported by substantial evidence. *McGlasson v. Workmen's Compensation Appeal Board (Philadelphia Eagles Football Club)*, 125 Pa.Commonwealth Ct. 487, 557 A.2d 841 (1989), *petition for allowance of appeal denied*, 525 Pa. 650, 581 A.2d 575 (1990).

An employer can receive credit for payments made in lieu of compensation paid to a claimant prior to the settlement of his or her claim for workmen's compensation benefits. *Allegheny Ludlum, Inc. v. Workmen's Compensation Appeal Board (Pavlik)*, 141 Pa.Commonwealth Ct. 219, 595 A.2d 680 (1991). "Payments in lieu of compensation" are "any voluntary or informal compensation, apart from the Act, paid with the intent to compensate for a work-related injury." *NUS Corporation v. Workmen's Compensation Appeal Board (Garrison)*, 119 Pa.Commonwealth Ct. 385, 389, 547 A.2d 806, 809 (1988) (emphasis deleted).

Our examination of the evidence in this case indicates that the parties intended the $65,000.00 injury protection payment to be in lieu of compensation and not wages for services performed. Article X of the football club's collective bargaining agreement articulates the requirements for the injury protection benefits. Essentially, the benefits are paid to players who have been injured during an NFL football game or practice and have become disabled. Article X states:

Section 1. Qualification: A player qualifying under the following criteria will receive an *injury protection benefit* in accordance with Section 2 below:

(a) *The player must have been physically unable, because of severe football injury in an NFL game or practice,* to participate in all or part of his club's last game of the season of injury, as certified by the club physician following a physical examination after the last game; or the player must have undergone club-authorized surgery in the off-season following the season or injury; and

(b) The player must have undergone whatever reasonable and customary rehabilitation treatment his club required of him during the off-season following the season of injury; and

(c) The player must have failed the pre-season physical examination given by the club physician for the season

following the season of injury because of such injury and as a result his club must have terminated his contract for the season following the season of injury. The past understanding of the parties concerning the club releasing a player who otherwise qualifies under (a) and (b) above prior to the pre-season physical examination, will be continued during the term of this Agreement.

Section 2. Benefit: *Effective after the execution of this Agreement, a player qualifying under Section 1 above will receive an amount equal to 50% of his contract salary for the season following the season of injury, up to a maximum payment of $65,000, unless he has individually negotiated more injury protection into that contract.* A player will receive no amount of any contract covering any season subsequent to the season following the season of injury, except if he has individually negotiated injury protection into that contract. The benefit will be paid to the player in equal weekly installments commencing no later than the date of the first regular season game, which benefit payments will cease if the player signs a contract for that season with another NFL club. A player will not be entitled to such benefit more than once during his playing career in the NFL (emphasis added).

Erenberg's contract, in existence for the duration of time when he was injured, indicates that Erenberg would be paid his salary plus any additional compensation benefits and reimbursements, including injury protection payments, as may be called for in the collective bargaining agreement in existence during the term of the contract.

Significantly, term No. 10 of Erenberg's player contract specifically refers to workmen's compensation. Term No. 10 states:

WORKMEN'S COMPENSATION. Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workmen's compensation benefits by reason of temporary

total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workmen's compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workmen's compensation.

The injury protection terms of the collective bargaining agreement, read in *pari materia* with the workmen's compensation terms of Erenberg's contract, indicate that the parties intended that advance injury protection payments would be in lieu of workmen's compensation and not wages. Because the $65,000.00 injury protection payments were payments in lieu of workmen's compensation, the Board should have calculated petitioners' credit for the workmen's compensation payments based on Erenberg's workmen's compensation rate of $361.00 per week. Therefore, petitioners should have received 180 weeks of credit for workmen's compensation already paid under the injury protection plan. Hence, we hold that the Board erred when it failed to give petitioners credit for the $65,000.00 injury protection payment made in lieu of workmen's compensation.

■ The second issue raised by petitioners pertains to the Board's finding regarding Erenberg's disability. Petitioners argue that the referee erred in failing to make a finding of fact that Erenberg was partially disabled. The referee found that Erenberg was "temporarily totally disabled" from October 16, 1987 up to and including January 31, 1988. We must determine whether the referee's finding of temporary total disability is supported by substantial evidence in the record. The Supreme Court defines temporary total disability in *Turner v. Jones & Laughlin Steel Corporation*, 479 Pa. 618, 389 A.2d 42 (1978). The Supreme Court asserts that a claimant will be temporarily totally disabled during the time after his or her accident when the injuries sustained are healing.

The Supreme Court wrote, "[t]he word 'temporary' assumes a natural termination of the total disability status by the eventual healing of the injuries other than the specific loss injuries...." *Id.*, 479 Pa. at 626, 389 A.2d at 46.

Moreover, Section 306(c)(25) of The Pennsylvania Work-men's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(25), provides that a claimant can receive compensation for "any period of disability necessary and required as a healing period." However, Section 306(c)(25) of the Act also provides that "[t]he healing period shall end (i) when the claimant returns to employment without impairment in earnings...." *Id.*

A claimant's benefits can be reduced if his or her disability status changes from total disability to partial disability. *McGregor Architectural Iron Company v. Workmen's Compensation Appeal Board (Roach),* 112 Pa.Commonwealth Ct. 601, 535 A.2d 1241 (1988). To show entitlement to partial disability benefits under Section 306(b) of the Act, 77 P.S. § 512, the claimant must initially prove his or her inability to perform his or her pre-injury job. The employer then has the burden of demonstrating the availability of alternative employment which the claimant is capable of performing. *Sun Oil Company v. Workmen's Compensation Appeal Board (Davis, III),* 144 Pa.Commonwealth Ct. 51, 600 A.2d 684 (1991). If the employer proves that there is alternative employment which the claimant is capable of performing, and the claimant follows through and is hired by one of the alternative employers, that claimant is partially disabled and can no longer receive total disability benefits. *McGregor.*

Evidence in the record supports the referee's finding that Erenberg was temporarily totally disabled during the healing period from October 16, 1987, the date of the injury, to January 31, 1988. Specifically, the report of Erenberg's doctor indicates that, on November 9, 1987, Erenberg underwent surgery related to the repair of his injured knee. Furthermore, evidence in the record supports the fact that during the months of December and January after Erenberg's injury, he underwent physical therapy and that, gradually during the month of January, he was able to return to normal activity. Hence, we affirm the Board's decision affirming the referee's finding that Erenberg was

temporarily totally disabled. However, this finding is limited to the period from October 16, 1987 until January 31, 1988.

█ Evidence in the record indicates, additionally, that Erenberg's disability status changed from temporary total disability to partial disability as of February 1, 1988. It is uncontested in this matter that Erenberg can no longer perform his pre-injury job as a professional football player. However, we find that the employer has demonstrated the availability of alternative employment which Erenberg was performing as of February 1, 1988. Testimony by Erenberg indicates that, as of February 1, 1988, he was hired by Mid–Atlantic Capital Group in Pittsburgh as a financial consultant. Additionally, Erenberg's testimony shows that he also worked on a free-lance basis for Channel 11 as a television sports announcer. The referee's finding that employer failed to establish that other suitable work was available to Erenberg, which he was capable of obtaining and performing from February 1, 1988, is not supported by substantial evidence in the record. Therefore, we reverse the Board as to this finding of fact and hold that employer has shown that Erenberg returned to work.

We note that, while Erenberg has returned to work, he has not completely healed from his injuries. Pursuant to Section 306(c)(25) of the Act, the healing period ends when the claimant returns to work *without impairment in earnings*. Obviously, Erenberg's earnings are still severely impaired because, while working as a professional athlete, Erenberg earned, pursuant to his contract, $135,000.00 per year. As of February 1, 1988, he earned $31,200.00 per year as a financial consultant with Mid–Atlantic Capital Group and approximately $8,000.00 per year working as a free-lance television announcer with Channel 11 (16 football shows at a rate of $500.00 per show).[2] Because Erenberg's

2. The record indicates that, after working for Mid–Atlantic Capital Group for one month, Erenberg pursued other business opportunities. From February until April, according to Erenberg's testimony, he was involved in a metal waste company business which employed him

disability continues,[3] he is, therefore, entitled to workmen's compensation benefits based on his partial disability status.

In summary, we reverse the Board's crediting of the injury protection payment as salary and order that the $65,000.00 should be credited as workmen's compensation benefits. Because the $65,000.00 injury protection payment was paid in lieu of compensation, petitioners' insurer should receive 180 weeks credit for these payments. Second, we hold that the referee's finding of fact that Erenberg was temporarily totally disabled is supported by substantial evidence in the record, but only as to the period from October 16, 1987 until January 31, 1988. On February 1, 1988, Erenberg returned to work, albeit at a reduced salary and, therefore, his disability status changed from temporary total disability to partial disability. His compensation should be adjusted accordingly.

McGINLEY, J., did not participate in this decision.

## ORDER

AND NOW, this 18th day of February, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed in part and affirmed in part pursuant to the foregoing opinion. The case is remanded for the Board's recomputation of Erenberg's benefits and

without a salary. After his employment relationship ended, Erenberg purchased part of a cellular telephone business called "Total Cellular Network." Evidence indicates that neither of these employment situations enabled Erenberg to earn a salary or wages close to what he previously earned as a professional football player.

3. Section 306(a) of the Act, 77 P.S. § 511, provides that an employer is not liable to pay a claimant compensation after the claimant's disability has ceased. This Court has consistently held that the term "disability" is defined as a "loss of earning power." *Dugan v. Workmen's Compensation Appeal Board (Fuller Company)*, 131 Pa.Commonwealth Ct. 218, 223, 569 A.2d 1038, 1041 (1990). Erenberg has obviously suffered a loss of earning because, before his injury, he was earning $135,000.00 and, presently, he is earning $31,200.00, plus $8,000.00 per year. Hence, we conclude that his disability continues.

its computation of the amount of credit for payments made in lieu of compensation consistent with this opinion.

Jurisdiction relinquished.