IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Finnigan,                           :
                    Petitioner              :
                                            :
            v.                              :  No. 2348 C.D. 2015
                                            :  Submitted:  May 20, 2016
Workers' Compensation Appeal                :
Board (FedEx Freight, Inc.),                :
                    Respondent              :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: August 26, 2016

            Kenneth Finnigan (Claimant) petitions for review of an adjudication
of the Workers' Compensation Appeal Board (Board) granting benefits for a
closed period of time but denying his request for penalties.  On the merits, the
Board affirmed the decision of the Workers' Compensation Judge (WCJ) to grant
benefits for a closed period and reversed the WCJ's grant of penalties.  In addition,
the Board denied Claimant's motion to dismiss the cross-appeal of FedEx Freight,
Inc. (Employer) as untimely.  Claimant contends the Board erred.  Discerning no
merit to Claimant's arguments, we affirm the Board.

            Claimant worked for Employer as a tractor-trailer driver.  On March
13, 2013, while stopped at a red light, an automobile struck the back of his trailer,
causing his left knee to hit the steering wheel.  He was 29 years old at the time of
the accident.  Claimant reported the accident immediately, but he did not seek

treatment until March 20, 2013. On March 23, 2013, he filed a claim petition pursuant to the Workers' Compensation Act (Act).[1]

On March 29, 2013, Employer issued a notice of temporary compensation payable (NTCP) for medical compensation only. On April 1, 2013, Employer issued a notice stopping the temporary compensation (NSTC) and a notice of compensation denial (NCD). On April 12, 2013, Employer filed an answer to the claim petition denying that Claimant had suffered a work injury. At the first hearing before the WCJ, Employer explained that it did not dispute the accident but, rather, the nature and extent of the claimed injury. Claimant responded by filing a penalty petition, claiming Employer violated the Act by denying the claim and failing to properly investigate it.

Claimant testified that he was stopped at a red light when an automobile hit the back of his truck. The truck was a freight liner with a cab and a 12-foot trailer. The automobile hit the bumper of the trailer, causing a dent; the impact caused Claimant's knee to strike the steering column. In spite of his knee pain, Claimant continued to work until March 20, 2013, when he sought treatment from Pamela Gianni, M.D., Employer's "work doctor." Notes of Testimony, May 15, 2013, at 15 (N.T., 5/15/2013, at ___); Reproduced Record at 146a (R.R. __). She restricted his job to desk work and ordered magnetic resonance imaging (MRI). Claimant returned to work on March 26, 2013, when Dr. Gianni advised him that the MRI was normal; that he had no sign of an injury; and that he could return to work without restrictions.[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[2] Claimant submitted the medical records of Dr. Gianni, which correspond to Claimant's testimony.

The same day, Claimant went to MedExpress, an urgent care facility. MedExpress suggested he see an orthopedic surgeon and scheduled a follow-up visit for the next day. At the follow-up visit, Claimant stated that the pain in his knee had resolved and that he did not need to see an orthopedic surgeon. MedExpress released him to return to work without restrictions.

Claimant testified that his knee pain had not, in fact, resolved. He reported it so to MedExpress because he wanted to get back to work. When the pain continued into April, he then saw the orthopedic surgeon to whom he had been referred by MedExpress.[3] To date, he has treated with several doctors. He returned to work full-time on September 25, 2013, but does not believe he is fully recovered from his work injury.

Claimant presented the deposition testimony of David Stone, M.D., who is board-certified in physical medicine and rehabilitation. Dr. Stone first saw Claimant on June 12, 2013, and he agreed that the March 22, 2013, MRI reported no abnormalities. Dr. Stone believed this could have been because it was an "open MRI."[4] Dr. Stone did not view the film of the March 2013 MRI; he only read the report.

---

[3] In April and May, Claimant treated with Mark A. Goodman, M.D., the orthopedic surgeon. Claimant submitted two documents signed by Dr. Goodman. The first was a letter advising that Claimant could not work "due to medical reasons" from April 8, 2013, through his next medical evaluation, scheduled for May 16, 2013. R.R. 25a. The second was a letter sent to Dr. Goodman from Claimant's counsel on May 20, 2014, requesting that the doctor answer "yes" or "no" to two questions regarding Claimant's injury. Dr. Goodman checked "yes" to the question of whether Claimant's knee injury was due to a motor vehicle accident and "yes" that Claimant was restricted from working due to the knee injury. R.R. 34a.

[4] Generally, an open MRI machine has a larger opening and does not completely surround the patient, as does a closed MRI. Dr. Stone did not explain why he believed an open MRI could skew the results.

3

A second MRI was performed on September 4, 2013. The report indicated hypertrophic quadriceps tendinopathy without focal tear. When Dr. Stone reviewed the second MRI film, he concluded that it showed a small partial tear. He diagnosed Claimant with a hypertrophic quadriceps tendinopathy with a small partial tear. He then concluded that the partial tear was likely present on the first, *i.e*, March 2013 MRI, but overlooked by the radiologist.

Dr. Stone acknowledged that tendinopathy is generally age related or associated with overuse or intensely traumatic injuries. He did not know the force of the impact to Claimant's knee, but he believed Claimant's injury to be consistent with the history Claimant presented of the vehicular accident.

Employer submitted a report from Jeffrey Kann, M.D., who conducted an independent medical examination (IME) of Claimant on June 10, 2013, and reviewed Claimant's medical records. This included the March 2013 MRI, which was negative for any pathology, and the MedExpress records where Claimant reported that his knee pain had resolved. Dr. Kann also reviewed the records of the orthopedic surgeon, which did not report any pathology.

Based on his physical examination of Claimant and a review of his medical records, Dr. Kann found Claimant to have suffered a left knee contusion that was resolved. He found no abnormalities during Claimant's physical examination and he found no physical cause for Claimant's subjective complaints of pain. He concluded that Claimant was fully recovered from any injury he sustained on March 13, 2013.

The WCJ found that Claimant was entitled to disability for the closed period of March 27, 2013, through June 10, 2013, after which benefits terminated.

The WCJ credited the report of Dr. Kann over Dr. Stone and Dr. Goodman.[5] She accepted Claimant's testimony that he sustained a work injury, but she rejected his claim that the injury continued. The WCJ also found that Employer's contest to the claim petition was reasonable. Regarding the penalty petition, the WCJ found Employer violated the Act by issuing a medical-only NTCP and later denying the injury. As such, the WCJ awarded a penalty of 10% of the amount due and owing Claimant.

Claimant appealed, and Employer filed a cross-appeal to the Board. Claimant moved to dismiss Employer's appeal, asserting that it had failed to effect service on Claimant. On the merits, Claimant argued that the WCJ erred in closing the record over Claimant's objections; failed to issue a reasoned decision; and erred by not awarding counsel fees for an unreasonable contest. Employer challenged the WCJ's penalty award.

The Board rejected Claimant's contentions. As to Employer's cross-appeal, the Board found the WCJ erred in finding Employer violated the Act. As such, the Board affirmed the grant of benefits for a closed period of time; reversed the grant of the penalty petition; and affirmed the denial of Claimant's request for counsel fees.

Claimant has petitioned for this Court's review and raises four issues.[6] First, he contends that the Board erred in denying his motion to dismiss Employer's cross-appeal. Second, he contends the WCJ closed the record without

---

[5] The WCJ noted that Claimant did not submit Dr. Goodman's treatment records.

[6] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

5

reasonable notice to him. Third, he contends the Board erred in affirming the termination of benefits. Fourth, he contends that Employer's contest was unreasonable and that the Board erred in otherwise holding.[7]

In his first issue, Claimant contends that he was not properly served with Employer's cross-appeal and, therefore, it should have been dismissed. Employer counters that its cross-appeal was timely filed by means of the Workers' Compensation Automation and Integration System (WCAIS). Claimant received timely notice of Employer's cross-appeal; the appeal document was not attached to Employer's notice because it had not yet been processed by the WCAIS system.

On September 2, 2014, Claimant appealed the WCJ's decision. Section 423(b) of the Act[8] gave Employer 14 days to appeal; it states as follows:

> If a timely appeal is filed by a party in interest pursuant to clause (a), any other party may file a cross-appeal within fourteen days of the date on which the first appeal was filed or within the time prescribed by clause (a), whichever period last expires.

77 P.S. §854.1. Employer filed its cross-appeal on September 12, 2014, and on the same day, Employer sent Claimant's counsel the following e-mail:

> Please see attached. I have filed a cross appeal and Petition for Supersedeas while the appeal is pending.

---

[7] In the table of contents portion of the brief, Claimant lists the same four issues that are addressed in the argument portion of the brief. However, in the section of the brief that lists the statement of questions involved on appeal, Claimant lists five issues, with the additional issue as whether the Board erred in reversing and vacating the award of penalties. Claimant's Brief at 2. This issue was not briefed and "[i]ssues not briefed are waived." *Van Duser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994).

[8] Added by the Act of June 24, 1996, P.L. 350.

6

> Attached please find confirmation of the Appeal being filed and the Petition for Supersedeas. However, the actual Appeal is not attached as I clicked to file the Petition for Supersedeas before printing the actual Appeal. The Appeal has not popped up in my dashboard. I will forward to your attention upon receipt.

Certified Record (unnumbered), E-mail of September 12, 2014. The attachment to the e-mail included a WCAIS summary showing that Employer filed a cross-appeal on September 12, 2014.

Claimant contends this e-mail does not comport with the Special Rules of Administrative Practice and Procedure that govern appeals to the Board. Section 111.12(d)-(e) states as follows:

> (d) The respondent shall serve a copy of any cross appeal upon all parties and the judge.
>
> (e) The petitioner or respondent shall, concurrently with the filing of an appeal or cross appeal, on a form prescribed by the Board or in substantial compliance therewith, file a proof of service with the Board containing:
>
>> (1) A statement of the date of service.
>>
>> (2) The names of parties and judge served.
>>
>> (3) The mailing address, the applicable zip code and the manner of service on the parties and judge served.

34 Pa. Code §111.12(d)-(e). Claimant argues that an appeal cannot be perfected under Section 111.12(d) without serving a copy of the cross-appeal. Employer did not do so and, thus, it did not effect service by the deadline of September 12, 2014.

In denying Claimant's motion to dismiss, the Board explained that neither "the Act or the regulations require dismissal of a timely-filed appeal or cross-appeal as a sanction for a technical deficiency in service." Board

Adjudication at 4. In his appeal, Claimant offers no authority to support his challenge to the Board's analysis. Claimant simply argues that the humanitarian objectives of the Act require that it be construed in favor of the Claimant and, in support, cites *Turner v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corporation)*, 389 A.2d 42, 47 (Pa. 1978), and *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 672 A.2d 1319, 1321 (Pa. Cmwlth. 1996).

*Brown* and *Turner* each recite that the Act should be liberally construed, with borderline interpretations resolved in favor of the injured employee. However, *Brown* and *Turner* are distinguishable.

In *Brown*, the claimant had returned to light duty work at the same hourly rate as she was paid prior to her work injury. However, because the employer could not make overtime available, the claimant was paid less than she earned before her injury. The Supreme Court held that the claimant was entitled to partial disability benefits to make her earnings equal to her pre-injury wage.

In *Turner*, the claimant's work injury rendered him a paraplegic. At issue was whether the claimant could modify the award from total disability to specific loss because it would be economically advantageous under his union contract. Generally, total disability benefits are more beneficial than specific loss benefits. The Supreme Court held that a claimant whose injury falls into either category could choose the option most advantageous to him.

In reaching their respective holdings, *Brown* and *Turner* recited the principle that the Act "where borderline" should be construed in favor of the claimant. *Brown*, 672 A.2d at 1321; *Turner*, 389 A.2d at 47. Here, by contrast, we are not concerned with the benefit provisions of the Act. Rather, we consider a

8

regulation that governs the procedures to be followed in a workers' compensation proceeding and applies both to claimants and to employers. The regulation was not intended to favor either side and must be applied consistently to all parties. We reject Claimant's argument that the regulation must be construed in close cases to favor the claimant but against the employer. Procedural rules are intended to level the playing field, not tip it in favor of either side.

The Board held that its regulation requiring attachment of the copy of the cross-appeal was technical in nature and not jurisdictional. There was no question that the cross-appeal was timely filed and immediately available to Claimant on the WCAIS, as explained by Employer's counsel in his e-mail. We agree with the Board that in these circumstances the regulation does not require dismissal of Employer's timely-filed cross-appeal. Board Adjudication at 4. We reject Claimant's contrary argument.

In his second issue, Claimant argues that the WCJ closed the record without notice and wrongly denied Claimant's attempt to subpoena records from Employer in June 2014. Employer responds that Claimant's argument is a complete fabrication of the history of the case.

The Special Rules of Administrative Practice and Procedure authorize the WCJ to manage the proceeding. Section 131.101 states as follows:

> (a) The judge may require the parties to submit proposed findings of fact, conclusions of law and legal briefs or memoranda to the judge for review and consideration.
>
> (b) *Submissions referred to in subsection (a) shall be made within the time specified by the judge, but not later than 30 days following the close of the record*.
>
> (c) *The evidentiary record is closed when the parties have submitted all of their evidence and rested or when the judge has*

*closed the evidentiary record on a party's motion or the judge's own motion.* If the judge determines that additional hearings are necessary, or that additional evidence needs to be submitted, or if the judge schedules additional written or oral argument, the evidentiary record may be held open by the judge. When the judge determines that the evidentiary record is closed, the judge will notify the parties that the evidentiary record is closed on the record or in writing.

(d) A party may move to close the evidentiary record and all other parties shall advise the judge within 20 days as to whether the evidentiary record is closed or whether there is additional evidence to be submitted. At the conclusion of the 20-day period, the judge will determine whether the evidentiary record will be closed or will remain open.

(e) *A judge may close the evidentiary record on the judge's own motion even if all parties have not rested when the judge determines that the parties have had reasonable opportunity to present their case, provided that reasonable notice of the closing of the evidentiary record has been given to all parties.*

34 Pa. Code §131.101(a)-(e) (emphasis added). The regulation authorizes the WCJ to close the record on his own motion. 34 Pa. Code §131.101(e). We have held that the exercise of a WCJ's discretion under the above-stated regulation will not be reversed absent a showing of an abuse of discretion. *Hammerle v. Workmen's Compensation Appeal Board (Department of Agriculture)*, 490 A.2d 494, 497 (Pa. Cmwlth. 1985).

We begin with a timeline of the proceeding, which was not provided by Claimant. The claim petition was filed on March 23, 2013. On April 18, 2013, Claimant requested Employer to provide the WCJ with all discoverable items, including wage information, claim notes, records relating to the vehicle accident, witness statements and any documents relating to Employer's defense. At the January 16, 2014, hearing, which was the second in the case, the WCJ questioned

10

whether Claimant needed a deposition inasmuch as it appeared that a report from Claimant's doctor would be sufficient. Nevertheless, the WCJ gave Claimant 45 days to submit either a deposition or a report. The WCJ also agreed to schedule a hearing to take testimony from Claimant and stated "[p]erhaps we'd be able to close at the next hearing." N.T., 1/16/2014, at 9; R.R. 179a.

At the April 3, 2014, hearing, both parties moved to admit their exhibits into evidence. This included the deposition testimony of Claimant's medical expert, Dr. Stone, and the parties' other proffered exhibits. All were admitted, subject to any objections to be ruled upon by the WCJ. Claimant submitted his brief. At the conclusion of the hearing, the WCJ stated "All right, I'll diary it for 30 days for Employer's briefs since I have Claimant's. All right? And we should be able to close." N.T., 4/3/2014, at 25; R.R. 207a. The WCJ also noted that Claimant's bill of costs had not been submitted. Claimant's counsel replied he would submit it.

On May 8, 2014, Claimant's counsel sent a letter to the WCJ, via the WCAIS, complaining that Employer's brief contained the assertion that the slight vehicle impact that occurred could not have caused Claimant's injury. Claimant's counsel stated that "should [the WCJ] feel it necessary," a hearing could be scheduled to determine the truth of this factual assertion. R.R. 101a.

On June 4, 2014, Claimant's counsel logged on to WCAIS and submitted a subpoena request, and Employer challenged the request. On June 17, 2014, Claimant's counsel sent another letter to the WCJ. Therein, he complained of Employer's conduct and requested an award of counsel fees, stating that he "sought this subpoena request to illuminate issues pending before this Honorable Court based on the Pennsylvania Workers' Compensation Act and the pending

11

petitions at issue in the matter *sub judice*." R.R. 111a. The subpoena was for insurance claim notes, which Claimant asserted should have been sent to him pursuant to his April 18, 2013, discovery request. As to why Claimant waited over a year to complain about not obtaining the notes, Claimant stated: "Whether [Employer] has engaged in a reasonable contest is always at issue and an unreasonable contest [is] particularly significant in light of the facts … underlying this case." R.R. 111a.

On June 27, 2014, the WCJ ruled. She refused to reopen the record for additional evidence on the claims processing notes. She explained that "[t]he briefs and closing documents of the parties were submitted in May...." R.R. 131a. Thus, the attempt in June to request a subpoena was untimely. The WCJ advised Claimant that "if the records you are requesting in your subpoena were so germane to your petitions, this evidence should have been sought before the case was closed and in line for decision." R.R. 131a.

At the final hearing on April 3, 2014, the WCJ stated she was holding the record open for 30 days for the submission of briefs with proposed findings of fact and conclusions of law. Under the regulation, briefs "shall be made within the time specified by the judge, *but not later than 30 days following the close of the record*." 34 Pa. Code §131.101(b) (emphasis added). The WCJ requested briefs because as the WCJ stated, "we should be able to close [the record]." N.T., 4/3/2014, at 25; R.R. 207a. At this time, Claimant had already submitted his brief. By May 2014, Claimant had submitted his costs.

Claimant's argument that he did not have reasonable notice that the record was closing is at odds with the record. Indeed, the Board specifically held that the WCJ did not abuse her discretion in refusing to reopen the record a year

12

after the proceeding began and several weeks after the last brief had been submitted. Claimant does not address this conclusion. Nor does he assert that the information sought was relevant or that its absence caused any prejudice. We reject Claimant's contention that the WCJ abused her discretion in denying his motion to reopen the record.

In his third issue, Claimant argues that the WCJ erred by accepting the testimony of Employer's expert, Dr. Kann, who conducted a single examination, over that of Dr. Stone, a member of a "world renown" sports medicine clinic. Claimant Brief at 16. Claimant contends that the Board erred in terminating Claimant's benefits. Employer responds that the WCJ is the finder of fact with sole authority to make credibility determinations. Dr. Kann examined Claimant's knee and found no abnormalities that would support Claimant's subjective complaints of pain. The March 2013 MRI of Claimant showed nothing abnormal in Claimant's knee. Dr. Stone did not accept the finding of the radiologist but conceded that he did not review the March 2013 MRI film.

The March 2013 MRI was read as normal by the radiologist, and Dr. Gianni, who ordered the MRI, so informed Claimant. Dr. Kann's opinion was based in part on the March 2013 MRI. Dr. Stone, who did not review the film of the March 2013 MRI, believed that there was a small partial tear shown in the second, September 2013 MRI. However, no such tear was noted by the radiologist. Dr. Stone opined that the "small tear" was likely present in the March 2013 MRI but overlooked by the radiologist.

"[C]redibility determinations are within the exclusive providence of the WCJ." *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 860 (Pa. Cmwlth. 2011). It does not matter if the evidence of

13

record can support a contrary finding, as long as the WCJ's finding is supported by substantial evidence of record. *Id.*

Here, the WCJ found that in March 2013, Claimant's knee showed no pathology. This finding was supported by the radiologist who did the MRI, Dr. Gianni and Dr. Kann, who could not find any abnormalities in Claimant's knee upon physical examination. Dr. Stone opined that the March 2013 MRI was improperly read. This suggestion would have had more weight had he actually reviewed the 2013 MRI film. The small tear he spotted six months later was not spotted by the radiologist who did the test. Even so, the small tear could have occurred sometime between March and September, in which case it would bear no causal connection to the work injury. In the end, the WCJ rejected Dr. Stone's opinion over the March 2013 MRI, which showed no abnormalities, and the independent medical examination of Employer's expert. This was the province of the WCJ, and we reject Claimant's argument on this issue.

In his final issue, Claimant argues that Employer did not present a reasonable contest. Claimant does not point to any facts that support this contention; rather, in conclusory fashion he charges Employer with presenting a frivolous contest. Employer counters that the claim petition's description of the injury was "knee," with no specificity as to which knee or the extent of the injury. Certified Record (unnumbered), Claim Petition at 1. In the absence of such information, Employer's contest about the extent and duration of the injury was reasonable.

Based on Dr. Kann's report, the WCJ found that Employer's contest on the nature and duration of Claimant's injury was reasonable. Whether a contest is reasonable is a question of law subject to this Court's review. *Yeagle v.*

14

*Workmen's Compensation Appeal Board (Stone Container Corporation)*, 630 A.2d 558, 560 (Pa. Cmwlth. 1993). The burden of establishing a reasonable contest is on the employer. *Delaware Valley Fish Company v. Workmen's Compensation Appeal Board (Woolford)*, 617 A.2d 48, 50 (Pa. Cmwlth. 1992). "A reasonable contest is established when conflicting or susceptible to contrary inferences in medical evidence exists and no evidence exists that an employer's contest was frivolous or filed to harass the claimant." *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc. & National Union Fire Insurance Co.)*, 646 A.2d 713, 716 (Pa. Cmwlth. 1994). An employer "may reasonably contest a workers' compensation claim in order to ascertain the proper period and/or duration of a claimant's disability." *Bell's Repair Service v. Workers' Compensation Appeal Board (Murphy, Jr.)*, 850 A.2d 49, 55-56 (Pa. Cmwlth. 2004). In determining whether a contest is reasonable we look to the evidence the employer had "at the time it made the decision to contest claimant's petition, or shortly thereafter." *Id.*

When first informed that Claimant was in a work-related vehicle accident in March 2013, Employer issued a medical only NTCP. By April 2013, when Employer filed its answer to the claim petition and issued the NSTC, it had learned that Claimant's March 2013 MRI was normal, and Dr. Gianni's medical examination found no abnormalities. Further, Claimant informed his treating physician at MedExpress that his knee pain had resolved. Claimant was released to return to work without restrictions in March 2013. By June 2013, Employer had a report from Dr. Kann, which stated that he found no evidence that Claimant's subjective complaints of pain were due to his work-related vehicle accident. Given

15

this evidence, Employer had ample grounds to contest the claim petition. We find no error by the Board in affirming the WCJ's holding on this issue.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Finnigan,             :
          Petitioner        :
                              :
          v.                :  No. 2348 C.D. 2015
                              :
Workers' Compensation Appeal   :
Board (FedEx Freight, Inc.),     :
          Respondent     :

# **O R D E R**

AND NOW, this 26th day of August, 2016, the order of the Workers' Compensation Appeal Board, dated October 28, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge