Anthony J. Vovericz, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Commonwealth of Pennsylvania, Second Injury Reserve Fund, and S & W Metal Products, Inc., Respondents.

Argued September 15, 1978, before Judges CRUM-
LISH, JR., WILKINSON, JR. and CRAIG, sitting as a panel
of three.

*Paul A. Prince*, with him *Prince & Prince*, for appellant.

*Sandra S. Christianson*, Assistant Attorney General, for appellee, Commonwealth.

*Richard A. Bausher*, with him *Stevens & Lee*, P.C., for appellee, S & W Metal Products, Inc.

OPINION BY JUDGE CRAIG, March 6, 1979:

The right hand of Anthony J. Vovericz is affected by cerebral palsy. His left hand has had parts of the index, middle and ring fingers amputated because of an employment-related accident which occurred in September of 1974.

By agreement, his employer's carrier began paying him total disability compensation shortly after the accident.

To extend the period of disability compensation, claimant filed a petition against the Commonwealth's Second Injury Reserve Fund under Section 306.1 of The Pennsylvania Workmen's Compensation Act (Act).[1]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of May 29, 1945, P.L. 1186, *as amended*, 77 P.S. §516.

Section 306.1 allows additional compensation from the Commonwealth's fund "[i]f an employe, who has incurred (through injury or otherwise) permanent partial disability, through the loss, or loss of use of, one hand, one arm, one foot, one leg or one eye, incurs total disability through a subsequent injury, causing loss, or loss of use of, another hand, arm, foot, leg or eye. . . ."

Section 306(c)(24), 77 P.S. §513(24) provides that "[p]ermanent loss of the use of a hand, arm, foot, leg, eye, finger, or thumb, great toe or other toe shall be considered as the equivalent of the loss of such hand, arm [etc.]. . . ."

Under that section, it is agreed that, for Vovericz to sustain his claim against the Second Injury Reserve Fund, he must prove loss of use of his palsied right hand, and also that the work accident has left him without the use of his left hand. Thus the employer was joined as an additional party.

Aside from cross-examining claimant's witnesses, neither the employer nor the Commonwealth produced any evidence. The only testimony presented at the hearing before the referee was that of claimant himself and two doctors who had examined him, Dr. Morrisey, who testified personally, and Dr. Menkowitz, whose deposition was submitted by stipulation.

The referee found that, although claimant had sustained the loss of his left hand, he had not for all practical intents and purposes lost the use of his right hand. Therefore, the referee dismissed his claim against the Second Injury Reserve Fund. The Workmen's Compensation Appeal Board (Board) affirmed, and claimant appealed to this Court.

The only testimony of record is that of claimant and his witnesses, and they present a consistent picture of the observable facts of the disability in claimant's right hand. This is essentially a case where the referee and the Board chose not to find, on what amounts to given facts, that claimant had lost the use of his right hand. See Adams v. Dunn, 192 Pa. Superior Ct. 319, 162 A.2d 42 (1960). The ultimate finding is in dispute; the facts are not.

If evidence or testimony is equivocal or contradictory, it is clearly within the referee's domain to determine its weight and credibility; such a determination does not amount to a capricious disregard of the evidence. Warr v. Workmen's Compensation Appeal Board, 37 Pa. Commonwealth Ct. 370, 390 A.2d 899 (1978); Santore v. Workmen's Compensation Appeal

*Board,* 37 Pa. Commonwealth Ct. 351, 390 A.2d 878 (1978).

However, our review of the record in this case convinces us that neither contradiction, conflict nor equivocation exist as to the facts of what claimant can and can not do with his right hand. If all of the facts, including the proffered medical opinions, are considered, the conclusion that claimant has lost the use of his right hand for all practical intents and purposes is compelling.

The referee's specific factual findings in regard to the right hand are:

> [T]he condition . . . is permanent, . . . causing difficulty in holding a sheet of paper or small coins between his thumb and index finger, diminished sensation, and decreased fine motor coordination; however, claimant does have fairly good control of gross motions . . . can grasp, lift, pinch and hold objects, can button his shirt and can write his name, and pick up a book and paper clips. . . .

As far as they go, these findings have ample support in the evidence and reveal that the only substantial functional difference between what claimant can do with his left hand and what he can do with his right hand is that he has fairly good gross motor control in his right hand and can pinch and hold objects with it.

However, the referee's ultimate finding ignores the unequivocal and uncontradicted testimony of both medical witnesses and claimant himself that his right hand is of virtually no use to him functionally. Regardless of his gross motor control and his ability to pinch and hold an object, it is apparent that the condition in his right hand prevents him from carrying out useful functions with such an object. The ability to move his hand where he desires and to pinch

and hold some objects is of little value to him when he undoubtedly can do little or nothing practical with those objects.[2]

---

[2] On cross-examination Dr. Morrissey testified as follows:

Q. He doesn't have complete loss of use of his right hand, does he?

A. He can lift with it. He can do pinching with it. He can hold objects in it, yes.

. . . .

Q. And he certainly hasn't lost the total use of his right hand, has he?

A. *Well once he gets the objects in his hand he can't do anything with them.*

. . . .

Q. I believe you said that his fine motor control is poor but that he had fairly good gross control?

A. He can put his hand where he wants it. *Once he gets it there he can't do much with it.* (Emphasis added.)

The findings also ignored Dr. Morrissey's testimony as to the peculiar positioning of a hand afflicted with cerebral palsy:

A. He cannot come around and pinch in a normal fashion, . . . he comes with the use of the long flexors and the long abductors of the thumb. . . .

. . . .

A. . . . His wrist is flexed at 90°, so his functional use is just about nil.

. . . .

Q. You demonstrated that his wrist of his right hand hangs down most of the time?

A. Yes.

Q. [H]e cannot raise that with his power in his right hand and arm alone; is that true?

A. Yes.

. . . .

A. When he goes to pick something up he has an involuntary firing of all the muscles in the arm and the stronger ones are the ones on the underside of the arm that contract and overpower the ones on the top, [so that in attempting to lift anything the hand and wrist automatically flex into the classic position of one afflicted with cerebral palsy].

The significant medical testimony dealing directly with the issue of the loss of use is: (1) Dr. Morrissey's uncontradicted and unequivocal opinion that claimant has, for all practical intents and purposes, lost the use of his right hand;[3] (2) the uncontradicted testimony as to the fact that claimant has, at best, much difficulty in performing any mundane task such as using eating utensils and buttoning his shirt; and (3) that what grasping, pinching and lifting ability remains in the right hand is all but negated by his inability to manipulate anything in a *practical* way.

This Court has consistently followed the leading loss of use case of *Curran v. Walter E. Knipe & Sons, Inc.*, 185 Pa. Superior Ct. 540, 138 A.2d 251 (1958), wherein the court explained that although the "for all practical intents and purposes" test generally requires

---

Q. And the only way when he goes to lift something that he can change that dropping of his hand is by an aid from another member of his body, as the left hand and the left arm?

A. Yes.

Dr. Menkowitz in his deposition went even further and testified that the claimant had no fine motor coordination in his right hand, agreeing that he was referring to the ability to use the fingers selectively as opposed to just using the hand as a grasper and a wedge. He also stated that claimant did not have "digital dexterity." Nevertheless, the Board's opinion upholding the referee's decision states that Dr. Menkowitz testified that claimant did have digital dexterity.

The Commonwealth also asserts that Dr. Menkowitz's opinions were equivocal. Dr. Menkowitz' seeming uncertainty was on job availability issues, beyond his expertise, not on the physical function aspects within his medical knowledge.

[3] Nothing herein is intended to imply that the referee *had* to accept Dr. Morrissey's opinion, even in the absence of an opposing opinion. *Compare Verna v. Stabler*, 204 Pa. Superior Ct. 87, 203 A. 2d 578 (1964). (Board did not have to accept medical opinion that claimant had lost use of foot where non-opinion testimony was otherwise overwhelming that claimant in fact used injured member constantly in everyday living.)

a "more crippling injury" than the industrial use test, nevertheless:

> [I]t is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes.

185 Pa. Superior Ct. at 547, 138 A.2d at 255.

*See, e.g., Wall v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 12, 315 A.2d 656 (1974). (Referee could properly find permanent loss of use of the entire hand even though claimant could still write, eat, clothe himself and stack boxes using that hand.)

Thus, while the evidence presented (and certainly Dr. Menkowitz's testimony) may allow a conclusion that claimant retains some actions in his right hand, only a capricious disregard of competent evidence can yield the conclusion that claimant has not established a loss of usefulness for all practical intents and purposes.

Claimant has sought reimbursement of attorney's fees and witness costs against the employer.

He contends that he should have been awarded attorney's fees under Section 440 of the Act, 77 P.S. §996;[4] *i.e.*, that the Board and the referee erroneously concluded that the employer had a reasonable basis for contesting the loss of use of the left hand. *See Ball v. Workmen's Compensation Appeal Board,* 19 Pa. Commonwealth Ct. 157, 340 A.2d 610 (1975). For several reasons, we do not agree.

Resolution of the reasonable basis for contest issue "depends upon both the facts and the legal issues involved." *Poli v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 630, 633, 384 A.2d

---

[4] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

596, 598 (1978). As to the employer, the legal issue here was permanent loss of use of the left hand, not total disability nor loss of three fingers. We are satisfied that Dr. Morrissey conveyed to the employer sufficient doubts as to the permanence of the condition of claimant's entire left hand. Also, since claimant never returned to work, the employer had no first-hand knowledge of claimant's ability to use that hand in employment situations. Therefore, this case does not demonstrate the obvious knowledge of the employer found in *Ratchko v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 585, 377 A. 2d 1012 (1977).

Even more important, this proceeding from the outset was directed primarily against the Commonwealth's Second Injury Reserve Fund, which at all times was claimant's foremost adversary. The Commonwealth was demanding proof of loss of use of the left hand anyway and therefore the employer was basically an additional party, compulsorily joined. Consequently, the proof as to the loss of use of the left hand was necessary in any event.

The mere fact that employer's only evidence was that which it adduced by cross-examination does not render its basis for contest per se unreasonable. *See Ballas v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 82, 377 A.2d 1069 (1977).

Unlike attorney's fees, Section 440 contemplates that a prevailing claimant always be awarded a reasonable sum for costs incurred in producing witnesses. Here, the referee concluded that claimant was entitled to a reasonable sum for Dr. Morrissey's testimony. However, we agree that the onus was upon claimant to provide the referee with some indication of what such a reasonable sum would be, and, that not having done so, he cannot now complain because the referee did not improvise a reasonable figure.

Finally, claimant and the Commonwealth argue the question of whether or not costs can be assessed against the Commonwealth if it is found that claimant should prevail against the Second Injury Reserve Fund.

However, claimant must first be awarded compensation before the issue of costs and attorney's fees arises. *See Shannon v. Southwark Metal Manufacturing Co.*, 27 Pa. Commonwealth Ct. 461, 366 A.2d 963 (1976).

A claimant must be totally disabled to receive compensation under Section 306.1 as well as lose the use of both members. Total disability involves consideration of variables other than those involved in a loss of use case. *See Baker v. O. B. Cannon & Sons, Inc.*, 26 Pa. Commonwealth Ct. 143, 145, 362 A.2d 1150, 1152 (1976). Claimant did present relevant evidence on the issue of his total disability.

Section 306(c) of the Act, 77 P.S. §513, provides:

(23) Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability, to be compensated according to the provisions of clause (a) [Section 306 (a) of the Act, 77 P.S. §511].

Thus, although the loss of both hands is presumed to constitute total disability, this section requires that the Board have an opportunity to determine otherwise. *Cf. Symons v. National Electric Products, Inc.*, 414 Pa. 505, 200 A.2d 871 (1964).

We have no previous ruling that the quoted presumption of Section 306(c) stated to be applicable to Section 306(a) compensation, applies also to Section 306.1 Second Injury Reserve Fund issues. However, we see no reason why it should not, and we so hold.

Because the referee and Board never reached the question of total disability, we remand for a determination of that issue.

ORDER

AND Now, this 6th day of March, 1979, the order of the Workmen's Compensation Appeal Board dated June 16, 1977 dismissing Anthony J. Vovericz's claim against the Second Injury Reserve Fund is set aside, and it is hereby ordered that the record be remanded to the Workmen's Compensation Appeal Board to direct a determination, under Section 306(c) of the Workmen's Compensation Act, of whether the loss of both hands constitutes other than total disability.