COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKERS' COMPENSATION, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (SNYDER), Respondent.

Randy SNYDER, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKERS' COMPENSATION, as Conservator of The Subsequent Injury Fund), Respondent.

Commonwealth Court of Pennsylvania.

Argued April 10, 1997.

Decided Aug. 27, 1997.

Susan N. Duke, Harrisburg, for petitioner.

Karen L. Steele, Altoona, for respondent.

Before DOYLE and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

DOYLE, Judge.

This case involves cross appeals regarding benefits from the Subsequent Injury Fund (Fund) under the provisions of Section 306.1 of the Workers' Compensation Act (Act).[1]

The facts are as follows. On January 12, 1990, Randy Snyder (Claimant), while in the course of his employment as an interstate truck driver for Birk Transfer, Inc., was struck in the right eye by a metal hook on a rubber tarp strap which snapped as he was attempting to tie a load of freight. At the time of this accident, Claimant was already legally blind in his left eye due to a childhood injury. His visual acuity in his left eye was 20/400. As a result of the accident, the lens of Claimant's right eye had to be surgically removed. However, with the aid of a removable contact lens, Claimant is capable of nearly 20/20 vision in his right eye.

Pursuant to a Supplemental Agreement dated March 3, 1992, Claimant and Birk Transfer, Inc. agreed that Claimant's injury had, as of January 12, 1991, "resolved itself into a specific loss of use of the right eye." (Supplemental Agreement at 1; Reproduced Record (R.R.) at 5a.) As such, Claimant received a benefit rate under Section 306(c)(7), 77 P.S. § 513(7), of $302.50 per

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 516. Section 306.1 was added by Section 1 of the Act of May 29, 1945 P.L. 1186.

week for a period of 275 weeks.[2]  On March 18, 1992, the Workers' Compensation Appeal Board (Board) issued an order commuting the specific loss benefits to a lump sum payment of $62,157.20.

Thereafter, on August 1, 1992, Claimant returned to work as an interstate truck driver and earned an average weekly wage of $690.00.  However, by July 1, 1993, Claimant had to end this employment because he was unable to continue tolerating the extended wear of the contact lens in his right eye. Since January 1, 1994, Claimant has been employed as a local truck driver and earns only $280.00 per week, representing forty hours of work at a rate of $7.00 per hour.

On May 11, 1995, Claimant filed an amended claim petition [3] naming as a defendant the Department of Labor and Industry, Bureau of Workers' Compensation (Bureau), for additional benefits [4] from the Subsequent Injury Fund (Fund) pursuant to Section 306.1 of the Act, which provides in pertinent part:

> If an employee, who has incurred (through injury or otherwise) permanent partial disability, through the loss, or loss of use of, one hand, one arm, one foot, one leg or one eye, **incurs total disability through a subsequent injury,** causing loss of use of, another hand, arm, foot, leg or eye, he shall be entitled to additional compensation as follows:
>
> After the cessation of payments [for the specific loss] by the employer for the period of weeks prescribed in clause (c)

of section 306, for the subsequent injury, additional compensation shall be paid **during the continuance of total disability,** at the weekly compensation rate applicable for total disability.

77 P.S. § 516 (emphasis added).

It is undisputed that Section 306.1 provides compensation for a bilateral (second) loss even though the first loss was not work-related.[5]  Employees who have suffered two work-related losses are compensated under Section 306(c)(23) of the Act, which provides:

> Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes **shall constitute total disability,** to be compensated according to the provisions of [Section 306(a), 77 P.S. § 511.]

77 P.S. § 513(23) (emphasis added).

The issue presented, one of first impression, as keenly observed by Workers' Compensation Judge (WCJ) Robert Vonada, was as follows:

> The question left entirely unresolved by ... case law is whether the Claimant may be entitled to a modified compensation rate when he is successfully rehabilitated to resume work [but] at wages less than his pre-injury wage.

(WCJ's Decision at 5, Conclusion of Law No. 4; R.R. at 13a.)

Because Claimant was earning wages, the WCJ found that he was "partially disabled" and, therefore, granted him additional com-

---

2.  At the time of his work injury, Claimant earned an average weekly wage of $454.21.

3.  The first claim petition, filed on February 21, 1995, named only Birk Transfer, Inc., Claimant's employer at the time of the accident, as a defendant.  The amended petition added the Subsequent Injury Fund as a defendant.

4.  The period of 275 weeks for Claimant's specific loss of his right eye ended on April 26, 1996. Pursuant to Section 315 of the Act, 77 P.S. § 602, Claimant had three years from the expiration of his entitlement to specific loss benefits, or April 26, 1996, in which to file his claim against the Fund. Because Claimant filed his claim petition before the expiration of that date, *i.e.,* the

period of time for which specific loss benefits were payable, he was within the statute of limitations, and, his claim against the Fund was timely filed.

5.  Through the enactment of Section 306.1 of the Act, the General Assembly intended to encourage the "hiring of handicapped veterans and civilians ... by notifying employers that if a handicapped employe[e] sustained a subsequent injury resulting in total disability the burden of paying additional compensation would be on the Commonwealth and not the employer." *Carpinelli v. Penn Steel Castings Co.,* 209 Pa. Superior Ct. 390, 393–94, 227 A.2d 912, 913–14 (1967).

pensation from the Fund for 500 weeks, which is the maximum period provided when partial disability benefits are payable. The Board reversed, concluding that Claimant was entitled to compensation from the Fund for "total disability" and that such compensation would continue until the second loss would heal. The Board further determined, however, that the total disability benefits from the Fund should be reduced by Claimant's current earnings-that is, that Claimant's present earnings would reduce the Claimant's time-of-injury average weekly wage, and Claimant would receive his benefits at two-thirds of the balance.

On appeal, the Bureau contends that because Section 306.1 of the Act speaks in terms of continuing "total disability," Claimant is not entitled to compensation from the Fund because he is not "totally disabled" and, to the contrary, he has returned to work, albeit at wages which are less than his time-of-injury wage. The Bureau contends that such wages prevent Claimant from being *actually* totally disabled. The Bureau argues that the Board erred in applying the presumption of "total disability" found in Section 306(c)(23) of the Act, 77 P.S. § 513(23), to the circumstances which would give rise to a claim under Section 306.1.

The Claimant contends in his cross appeal that the Board erred in reducing his total disability benefits by the amount of his current earnings, or, in the alternative, that it erred in calculating the reduction by deducting his current earnings from his average weekly wage at the time of the injury.

After a thorough review of the governing provisions of the Act and of the relevant case law, we conclude that the Board reached the correct decision and that the arguments presented on appeal in opposition to the Board's decision are unpersuasive.

■■■ In general, under Section 306(a) of the Act, 77 P.S. § 511, an employee is considered "totally disabled" when he has suffered a total loss of earning power because of a work injury. *See Meden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 167 Pa.Cmwlth. 68, 647 A.2d 620 (1994), *petition for allowance of appeal denied,* 540 Pa. 624, 657 A.2d 494 (1995). If an employee's earning power is diminished because of a work injury, and he returns to employment, but for wages which are less than he was earning when the injury occurred, then he is considered only "partially disabled" and is compensated pursuant to Section 306(b), 77 P.S. § 512, in which benefits are limited to 500 weeks (nine years, one month and one week.) The Act also provides for specific loss benefits under Section 306(c), 77 P.S. § 513, regardless of the nature or extent of actual disability. However, because of the severe effect that bilateral losses have upon a claimant's earning capacity, the General Assembly enacted Section 306(c)(23), which conclusively presumes that an employee who suffers a bilateral loss is "totally disabled," and, therefore, the employee is entitled to total disability benefits provided under Section 306(a).

■■■ On the merits of the appeal, because the provisions of the Act are remedial in nature and because borderline interpretations are to be liberally construed in favor of the injured employee,[6] we must disagree with the Bureau that **actual** "total disability" is required for compensation under Section 306.1. Rather, we conclude that the presumption of "total disability" in Section 306(c)(23) applies equally as well to the bilateral losses which are compensable under Section 306.1, where the first loss is not work-related.

Our research has disclosed only one previous decision in this Commonwealth that involves the applicability of the above presumption under Section 306(c)(23) to Section 306.1. In *Vovericz v. Workmen's Compensation Appeal Board (S & W Metal Products, Inc.),* 41 Pa.Cmwlth. 94, 398 A.2d 734 (1979), the claimant had a preexisting condition of

---

**6.** *See General Refractories Company v. Workmen's Compensation Appeal Board (Wright),* 535 Pa.

306, 635 A.2d 120 (1993); *Hinkle v. H.J. Heinz Co.,* 462 Pa. 111, 337 A.2d 907 (1975).

cerebral palsy in his right hand when his left hand was injured in a work-related accident. The claimant eventually filed a petition for compensation under Section 306.1. The WCJ found that the claimant had not lost the use of his right hand, and, therefore, because he did not suffer a loss of both hands, the WCJ dismissed his claim against the Subsequent Injury Fund. The Board affirmed, but this Court reversed the Board, concluding that the WCJ capriciously disregarded competent evidence presented by the claimant that he had lost the use of his right hand for all practical intents and purposes.

We stated in *Vovericz* that "[a] claimant must be totally disabled to receive compensation under Section 306.1 as well as lose the use of both members." *Vovericz*, 398 A.2d at 738. We then cited to Section 306(c)(23) and explained that "although the loss of both hands is **presumed** to constitute total disability, [the language 'unless the Board shall otherwise determine'] requires that the Board have an opportunity to determine otherwise," that is, to determine that a claimant is not totally disabled if he is earning **more than** his time-of-injury wage. *Id.* We then held that the **presumption** of "total disability" in Section 306(c)(23) **also applies** to Section 306.1. Because we determined that the evidence presented demonstrated that the claimant suffered a bilateral loss, we remanded the matter for a determination of "whether the loss of both hands constitutes other than total disability" under Section 306.1. *Id.* at 739.

We reject the Bureau's argument that total disability is not presumed even under Section 306(c)(23). The Bureau relies upon the Pennsylvania Supreme Court's decision in *Symons v. National Electric Products, Inc.*, 414 Pa. 505, 200 A.2d 871 (1964),[7] in which the Court held that the language in Section 306(c)(23), "[u]nless the board shall otherwise determine," gives the Board the discretion to determine that there is an absence of "total disability" when a claimant returns to work and earns wages *in excess* of those earned at the time of his injury.

In *Symons,* the claimant, while working as a molding machine operator, suffered an injury that required the amputation of both legs at points above each knee. The claimant received total disability benefits under Section 306(a), and he subsequently made a remarkable recovery with the aid of prosthetic devices. He returned to work at the same company, but this time he was employed as an inspector, which paid considerably more than did his job as a machine operator.

The claimant received specific loss benefits under Section 306(c), and, after he was paid the total compensation provided for under that section, the employer filed a petition to suspend further payment. In its petition, the employer argued that the claimant was entitled to no more compensation unless disability extended beyond the loss of two legs and he was therefore considered totally disabled under Section 306(c)(23).

The WCJ found that because the claimant had lost both legs he was "totally disabled." The Board reversed the WCJ, finding that the claimant was not "totally disabled" because he had resumed work at wages **in excess** of those received by him at the time of the accident.

This Court affirmed the Board and held that the statutory language found in Section 306(c)(23), "unless the board shall otherwise determine," vests with the Board "the authority to decide whether, in this area of specific losses, the factual circumstances establish the absence of total disability." *Symons,* 414 Pa. at 514, 200 A.2d at 876. We then explained that the Board had exercised its discretion under Section 306(c)(23) and "had 'otherwise determined' that a double amputee who has been so far rehabilitated that **he is able to earn more than his pre-accident wages is not** totally disabled." *Id.* at 514, 200 A.2d at 875–76.

■ It is our view that the *Symons* Court held that the Board must presume that a claimant is totally disabled under Section

7. We note that *Symons* was decided before this   Court's *Vovericz* opinion.

306(c)(23) unless he has returned to work **and is earning more than he did at the time of his injury.** In the instant matter, Claimant was earning $454.21 per week at the time of his accident, but currently earns only $280.00 per week. That wage is *below* his time-of-injury average weekly wage, and, therefore, the Board did not err, under *Symons,* in finding that Claimant was entitled to "total disability" benefits, less a credit for the wages he is currently earning.

We likewise disagree with the Claimant's contention that in a subsequent decision, *Turner v. Jones & Laughlin Steel Corp.,* 479 Pa. 618, 389 A.2d 42 (1978), the Supreme Court held that the language "unless the board otherwise determines" in Section 306(c)(23) only gives the Board the discretion to allow other than full total disability benefits when specific loss benefits would be more beneficial to the claimant. Claimant argues that *Turner* overruled *Symons* to the extent that *Symons* held that the above phrase gives the Board the discretion to determine that a claimant is not totally disabled if he is working and earning more than he did at the time of his injury.

In *Turner,* the claimant became a paraplegic as the result of an industrial accident with a total loss of sensation in his lower body and a total loss of use of all body functions below the chest level. Due to the severity of his disability, he never returned to work and was awarded total disability benefits under Section 306(a). He then petitioned to modify the compensation to a specific loss of use of both legs, even though he was still totally disabled.

The factor which prompted Turner's petition was that under his union contract, he was entitled to a permanent incapacity pension, *except* that upon reaching age 65 his pension would be reduced by any disability payments received pursuant to Section 306(a). His pension would not be reduced, however, by any payment for specific loss benefits under Section 306(c). In effect, when Turner reached age 65, unless he received workers' compensation benefits via the specific loss provisions of Section 306(c), he would entirely lose the value of his workers' compensation benefits.

Justice Manderino wrote for the Court and stated, "[f]or those specific reasons, it is to this appellant's overall financial advantage to receive compensation only for the loss of two legs rather than for total disability." *Turner,* 479 Pa. at 622, 389 A.2d at 44.

The Pennsylvania Supreme Court rejected the employer's argument that Section 306(c)(23) prohibits a claimant from electing specific loss benefits over total disability benefits. The Court held that Section 306(c)(23) "explicitly gives to the Board the discretion to determine the optimum benefit available to a claimant within the statutory scheme." *Turner,* 479 Pa. at 618, 389 A.2d at 46.

It is clear that the issue in *Turner* did not involve the discretion of the Board to determine if a claimant is totally disabled if he is earning higher wages than at the time of his injury, and, therefore, the *Symons* decision was irrelevant to the *Turner* Court. Indeed, the Supreme Court did not address the *Symons* opinion in *Turner.* Accordingly, we do not believe that *Turner* in any way conflicts with *Symons.*

It is thus clear that, under the relevant case law in this Commonwealth, actual disability is not the criterion under Section 306(c)(23). Rather, "total disability" is presumed under Section 306(c)(23), even when a claimant returns to work for lower wages.

Although both *Symons* and *Turner* are cases involving injuries that were both work-related, and therefore only Section 306(c)(23) was at issue, we are unaware of any reason why the presumption under that section should not equally apply under Section 306.1 when only the second injury is work-related. Whether a claimant has lost the use of both of his legs (*Symons; Turner*) or the sight in both of his eyes, as in this case, it matters little that the first loss was not work-related. It is the second injury, the work place injury, which has incapacitated the worker, and it is that injury which has rendered him totally

disabled. Therefore, we construe Section 306.1 as providing for the same compensation for employees who have sustained the same type of bilateral loss identified in Section 306(c)(23). We are simply not persuaded that an employee who has sustained bilateral losses compensable under Section 306.1 should be treated differently than one who has sustained similar losses under Section 306(c)(23).

We specifically reject the Bureau's argument that "total disability" under Section 306.1 cannot be presumed because the Act cannot compensate employees for injuries that are not work-related. By presuming that "total disability" exists, the provision merely compensates an employee for the severe effect that a **subsequent** *work-related* loss has upon earning power.[8] It is the work-related injury that causes the bilateral loss, and, thus, the General Assembly enacted Section 306.1 with the humanitarian objective of providing additional compensation for as long as the "total disability" continues, *i.e.,* until the claimant's earnings continue to be less than his time-of-injury wage, or until it is no longer in the claimant's best interest to receive benefits for total disability rather than specific loss benefits. *Turner.*

Accordingly, the Board did not err in concluding that "total disability" is to be judged on the existence of the specific loss and not on Claimant's ability to return to work for lower wages. The Board also correctly determined that the Bureau is entitled to a credit for Claimant's current earning power.

In his cross appeal, Claimant contends that the Board erred in allowing a credit for his earnings, and that, even if such a credit is allowed, it erred in calculating his subsequent injury benefits by deducting current earnings from his average weekly wage **at the time of the work injury,** which was $454.21. Rather, Claimant argues that the credit should be deducted **from his wages at the time of his increased disability,** that is, when his average weekly wage was $690.00 and he then was disabled from continuing

that employment as a long distance truck driver.

We agree with the Board that Section 306.1 was not intended to allow an injured employee to "double dip" by granting both total disability benefits and full wages. It is well-settled that compensation under the Act is calculated by reference to the time of injury wage. *See* Section 309 of the Act, 77 P.S. § 582. Claimant has provided no authority for the proposition that Section 306.1 benefits should be calculated differently from benefits afforded under the other provisions of the Act.

Accordingly, we affirm the order of the Board.

Judge LEADBETTER dissents.

### *ORDER*

NOW, August 27, 1997, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.